UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALEX OMAR O. A.,

Petitioner,

v.

UNITED STATES OF AMERICA, et al,

Respondents.

No. 2:26-cv-00105-TLN-CKD

**ORDER**

This matter is before the Court on Petitioner ALEX OMAR O. A.'s ("Petitioner") Motion for a Temporary Restraining Order ("TRO").[1]  (ECF No. 3.)  Respondents United States of America, Pamela Bondi, Kristi Noem, Polly Kaiser, Todd Lyons, and Tonya Andrews (collectively, "Respondents") filed an opposition.[2]  (ECF No. 11.)  Respondents indicated no

---

[1]  On January 14, 2025, Petitioner filed a pro se Petition for Writ of Habeas Corpus.  (ECF No. 1.)  Based on the substance of Petitioner's petition and the relief requested therein, the Court liberally construed the petition as a motion for a TRO.  (ECF No. 5.)

[2]  In a footnote, Respondents seek to dismiss all respondents other than Tonya Andrews. (ECF No. 11 at 1 n.1.)  The request, as made, is improper.  If Respondents seek to dismiss any respondents from this action, they must do so in a properly noticed motion.  *See Ortega v. Kaiser*, No. 25-CV-05259-JST, 2025 WL 2243616, at *4 (N.D. Cal. Aug. 6, 2025) ("[A] request for court order must be made by motion.  As a result, a request for affirmative relief is not proper when raised for the first time in an opposition.").

1

objection to the Court's consideration of Petitioner's motion on the briefing, without oral argument and as one for a preliminary injunction. (ECF No. 11 at 1.) For the reasons set forth below, the Court issues a preliminary injunction.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States on April 11, 2014. (ECF No. 11 at 2.) Upon entry, an asylum officer provided Petitioner with a credible fear interview, issued a positive fear finding and served Petitioner a Notice to Appear. (*Id.*) On August 9, 2017, Petitioner failed to appear for his immigration court hearing and was issued a removal order. (*Id.*) In December 2020, Petitioner's Motion to Reopen his removal proceedings was granted. (*Id.*) On May 11, 2023, Petitioner was convicted of domestic violence and battery. (*Id.*) On October 9, 2025, Petitioner was arrested, detained, and placed in immigration custody. (*Id.*) On December 3, 2025, an immigration judge denied Petitioner's applications for relief and ordered him removed from the United States. (*Id.*) Petitioner then appealed his removal order. (*Id.*)

### II.   STANDARD OF LAW

A preliminary injunction is an extraordinary remedy. Courts consider whether a petitioner has established: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh a petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a

2

preliminary injunction.  *Id.* at 1134–35.

**III.  ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's Motion.

A.    Likelihood of Success on the Merits

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  The Court considers each step in turn.

i.    *Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025).  "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Id.* (quoting *Morrissey*, 408 U.S. at

3

482) (modifications in original).  "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025) ("R.D.T.M. I").

As a preliminary matter, the Court finds Respondents' argument — that Petitioner is an "applicant for admission" under 8 U.S.C. § 1225 and therefore subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing — unpersuasive.

Courts have concluded "[f]or [§1225] to apply, several conditions must be met — in particular, an 'examining immigration officer' must determine that the individual is: (1) an 'applicant for admission'; (2) 'seeking admission'; and (3) 'not clearly and beyond a doubt entitled to be admitted." *Martinez v. Hyde*, No. CV 25-11613- BEM, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025).

First, there is no evidence in the record that an immigration officer made the requisite determinations for § 1225 to apply or that Petitioner is seeking admission and not clearly and beyond a doubt entitled to be admitted.  Following and adopting the reasoning of other courts, this Court finds Petitioner is not actively seeking lawful entry because he already entered the United States over eleven years ago.  *Salcedo Aceros*, 2025 WL 2637503, at *8 (collecting cases concluding that § 1225 applies only to noncitizens "seeking admission," a category that does not include noncitizens like Petitioner, living in the interior of the country.).

Further, Respondents' proposed interpretation of the statute disregards the relationship between §§ 1225 and 1226 and would render the recent amendment to § 1226(c) superfluous.  *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025).  Specifically, and as many courts have discussed in length, if every "applicant for admission" is subject to mandatory detention under § 1225, there would have been no need for § 1226(c)(1)(E), which mandates detention for every noncitizen who is "present in the United

States without being admitted or paroled" and who has been "charged with, arrested for, or admits to" committing certain crimes.  8 U.S.C. § 1226(c)(1)(E); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug 19, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2).").

Finally, Respondents acknowledge "until recently, the Government interpreted § 1226(a) to be an available detention authority for [noncitizens] present without being admitted or paroled placed directly in full removal proceedings under § [1229(a)]."  The Government's new interpretation of §§ 1225 and 1226 is inconsistent with decades of prior statutory interpretation and practice.  *Lepe*, 2025 WL 2716910, at *4 (collecting cases).  The Court finds that the Government's former practice of applying § 1226(a) to petitioners in similar circumstances is consistent with the text and statutory scheme.

As to whether there exists a protected liberty interest, the Court finds Petitioner has a liberty interest as he has developed "enduring attachments of normal life" as described in *Morrissey*, 409 U.S. at 482.  Moreover, Petitioner was released from immigration detention, which created a reasonable expectation that he would be entitled to retain his liberty, absent a material change in circumstances.  *Salcedo Aceros*, 2025 WL 2637503, at *6.  Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release.  *Morrissey*, 408 U.S. 471 at 482.

Given this, the Court finds Petitioner has established a strong likelihood of success in showing that he has a liberty interest.

### ii.      *Procedural Due Process*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner had been living in the United States since he entered in 2014 — over eleven years. (ECF No. 11 at 2.) Despite this, Petitioner has now been detained since October 9, 2025, without a bond hearing. (ECF No. 10 at 4.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." *R.D.T.M.*, 2025 WL 2617255, at *4 (internal quotation and citation omitted). Respondents do not contend that Petitioner is or was a flight risk or a danger to the community. (*See generally* ECF No. 11.) Even if Respondents did believe they had a proper reason to detain Petitioner, such a belief would warrant a pre-detention hearing rather than automatic detention. Indeed § 1226(a) confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Petitioner has not received this statutorily mandated bond hearing before a neutral decisionmaker. Based on this record, the Court finds there is a serious likelihood Petitioner has been and will continue to be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).

6

On balance, the Court finds the *Matthews* factors demonstrate Petitioner is entitled to due process: a hearing to determine whether detention is warranted.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of injunctive relief.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention[.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Petitioner has been detained since October 2025, without a bond hearing and "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, these last two factors weigh in Petitioner's favor.

Having found Petitioner is likely to succeed on the merits of his due process claim, the Court finds release is warranted to return to the status quo ante and remedy a constitutional violation.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

**IV.    CONCLUSION**

In accordance with the above, the Court issues the following PRELIMINARY INJUNCTION:

1. Respondents must IMMEDIATELY RELEASE Petitioner Alex Omar O. A. from custody under the same conditions as he was released previously, prior to his October 9, 2025 detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

2. Respondents are ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven days' notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have his counsel present.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

4. The matter is referred to a magistrate judge for further proceedings.

IT IS SO ORDERED.

Date: January 27, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE